# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Guardianship of:<br><br>T.B.,<br><br>            Minor Child. | No. 58976-1-II<br><br><br>UNPUBLISHED OPINION |

VELJACIC, A.C.J — Kamaleah Brown appeals the trial court's order appointing guardianship of her son, TB, to his maternal aunt and uncle.[1] She argues the trial court erred by serving her with paperwork that contained an incorrect court date. She argues the court erred by not appointing her counsel for three months. She argues the court erred by not assigning her son different counsel since she has a "conflict of personal interest" with the attorney. Br. of Appellant at 5. She also argues the court erred by denying her request to have a different judge preside over the guardianship determination. Despite these assignments of error, Brown ultimately argues the trial court erred by granting guardianship of TB to his aunt and uncle. However, Brown does not comply with RAP 10.3(a)(6) because she fails to provide argument for her assignments of error and fails to cite any authority or relevant portions of the record to support her argument.[2]

---

[1] Brown also includes the restraining order in her notice of appeal, however, she does not address this order in her brief.

[2] Brown also fails to comply with RAP 10.3(a)(5) because she fails to cite to the record in her statement of the case.

Therefore, we decline to address the merits of her claim, and we affirm the trial court's minor-guardianship order.

FACTS

I.    FACTUAL BACKGROUND

TB is 13 years old and has a complex medical history involving spinal cancer and scoliosis. He requires ongoing care for these conditions. TB's mother,[3] Brown, has been clinically diagnosed with mixed personality disorder with paranoid features, turbulent style, and compulsive personality disorder with the primary characteristic being her "suspiciousness" which becomes apparent in her interactions with those in positions of authority. Ex. 3, at 10. Brown's psychological evaluation and parenting assessment concluded that this often results in her inability to do what is in TB's best interest. Specifically, this assessment concluded that Brown's most significant parental deficiency is her suspicion regarding medical staff and "her inability to accept responsibility for her choices concerning her son's needed medical services." Ex. 3, at 12.

In October 2019, after TB underwent spinal surgery, his physician contacted the Department of Children Youth and Families to report that Brown had missed or cancelled several appointments for magnetic resonance imaging (MRIs) and physical therapy.[4] TB's doctor was concerned that Brown was not following the treatment plan and that TB's tumor might reoccur. In August and December 2021, two referrals were called into child protective services (CPS) because Brown refused to take TB in for chemotherapy and a blood transfusion.

_____

[3] The whereabouts of TB's father are unknown.

[4] Hospital records show there were six appointments missed or cancelled during this time.

Brown expressed hostility and threats of bodily harm toward TB's health care providers on numerous occasions to the point that TB was terminated from his primary care clinic and community providers. Brown was trespassed twice from Mary Bridge Children's Hospital, where T.B. was receiving treatment. Due to Brown's threatening behavior as well as her failure to comply with no-trespass letters, the hospital refused to continue to provide treatment for TB.

Brown also displays delusions including delusions about TB having a twin brother, Carter, who was stolen at birth, and delusions that TB's medical care providers have sexually assaulted him.

TB was placed into an individualized education program [IEP] after it was determined that his academic progress was delayed.[5] However, the school counselor at TB's school reported that Brown refused to participate in the IEP. In February 2020, a social worker attempted to contact TB at school but found out he had not been to school for a week. TB told the social worker he had not been attending physical therapy.

In May 2023, after multiple CPS referrals and two dependencies, counsel for TB filed a petition requesting that his aunt and uncle, whom he had been residing with during the second dependency,[6] be granted guardianship. TB stated, "I love my mom . . . [b]ut until she gets help, I do not want to live with her." Clerk's Papers (CP) at 100. In his declaration in support of his guardianship petition, TB stated that since being placed with his proposed guardians, he had learned how to do things like tie his shoes, make his bed, do his schoolwork, resolve conflict peacefully, and care for his plant.

Brown contested the guardianship.

---

[5] TB scored at or below the fourth percentile in all subject areas.

[6] The record is unclear if TB also lived with his aunt and uncle during the first dependency.

3

## II.    APPOINTMENT OF COUNSEL AND PRETRIAL HEARINGS

At the emergency guardianship hearing, the court asked Brown if she wanted an attorney appointed to her. Brown responded that she did not want an attorney. Despite this, the court asked Brown how much money she made each month. She responded, "about [$]3,500." Ex. 14, at 4. The court explained that she would, therefore, not qualify for an attorney at public expense. Brown interrupted the proceedings so many times, that the court threatened to have her removed from the courtroom. However, Brown did not stop interrupting and ultimately ended up threatening and making inappropriate comments to the court and opposing counsel.[7]

The court granted the emergency guardianship, placing TB with his aunt and uncle, and entered a temporary restraining order against Brown.

Prior to the final hearing on the guardianship petition, Brown filed a motion seeking to have an attorney appointed to her. On August 18, the court found Brown to be indigent and appointed her an attorney at public expense. However, this order was vacated because the attorney who had been appointed had a conflict of interest. The court appointed Brown a new attorney, Tarah Wagner, on August 21. Ten days later, Wagner moved to withdraw as Brown's counsel due to a "breakdown in communication." CP at 55.

At the hearing on the motion for withdrawal, the court allowed Wagner to withdraw and appointed Wagner as Brown's standby counsel instead. However, Brown indicated she did not want standby counsel. Ultimately, after interrupting the court four times, security was called, and Brown left the courtroom.

---

[7] Brown accused opposing counsel of sexually abusing children and told the judge, "I'll make sure you get fired." Ex. 14, at 15.

After the hearing was reconvened, Brown requested that the presiding judge be disqualified. The court denied this request because the judge had "previously exercised discretion in th[e] case."[8] CP at 63.

III. TRIAL

At trial, during cross-examination of Brown, the court instructed the judicial assistant to hit the panic alarm.[9] Brown left the courtroom and took the petitioner's tagged and marked exhibits with her. Despite Brown's absence, standby counsel, Wagner, stayed and made a closing statement on Brown's behalf.

The court ultimately found that Brown was not willing or able to "provide for the support, care, education, health, safety, and welfare" of TB and that it was in his best interest to have a guardian appointed. CP at 71. The court based this decision on the fact that Brown had a history of neglecting TB's school and medical needs, and she had created a barrier to TB getting the treatment he needed. The court relied on Brown's psychological evaluation, which concluded that her mental health disorder and the "suspicion" it caused her to exhibit contributed to her "inability to accept responsibility for her choices for her son's needed medical services." CP at 72. Since there was no evidence of "substantial or sustained treatment" and Brown's mental health condition had not improved, the court appointed TB's aunt and uncle to be his guardians. In order for Brown to have professionally supervised visitation with TB, the court ordered that Brown must undergo

---

[8] RCW 4.12.050(1)(a) requires that notice seeking disqualification must be given before the judge makes a discretionary ruling in the case.

[9] Since the record only has the minutes of the proceedings, and not the verbatim transcript, it is unclear exactly why the judicial assistant was instructed to hit the panic alarm.

a new psychological evaluation, complete six months of consistent therapy,[10] and "comply with any treatment recommended by the new evaluation." CP at 74.

Brown appeals.

## ANALYSIS

### I.   ASSIGNMENTS OF ERROR WAIVED

Brown assigns error to the fact that the court served her paperwork with an incorrect court date, failed to appoint her counsel for three months, failed to appoint her son different counsel, and denied her request to have a different judge preside over the guardianship proceeding.

RAP 10.3(a)(6) requires that an appellate brief contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." When "a party presents no argument on a claimed assignment of error, that assignment of error is waived." *In re Det. of L.S.*, 23 Wn. App. 2d 672, 686, 517 P.3d 490 (2022).

Here, Brown assigned four errors to the proceedings below. However, she provides no meaningful analysis or citation to authority in support of the claimed errors. As such, these assignments of error are waived.

### II.   UNSUPPORTED ARGUMENT

While Brown does not assign error to the trial court's guardianship order, she ultimately argues in the argument section of her brief that the trial court erred by granting the guardianship because there were no "actual substantial causes for removal" of TB. Br. of Appellant at 11.

---

[10] The court ordered Brown to undergo "at least twelve months of mental health therapy," but after six months, she could begin supervised visitation. CP at 74.

However, Brown fails to cite to the record[11] or any authority whatsoever to support this argument, as required by RAP 10.3(a)(5) and (6).

"This court will not consider claims insufficiently argued by the parties." *State v. Elliott*, 114 Wn.2d 6, 15, 785 P.2d 440 (1990); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument.").

As such, Brown's failure to provide any authority or meaningful analysis in support of her argument is fatal to her claim, and we decline to address its merits. Even so, nothing in the record substantiates Brown's allegation that the process was unfair.

### CONCLUSION

We affirm the trial court's order granting TB's guardianship petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Price, J.

_____
Che, J.

---

[11] Brown cites to the record five times in her brief. Four of these citations are in the assignments of error. However, only one citation actually corresponds to the claim being made, and that is the citation in the first issue pertaining to her assignments of error.